IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS
**ENTERED**
TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

| | |
|---|---|
| IN RE: § § JAMES WADDELL JOHNSON, a/k/a § J.W. JOHNSON d/b/a AMERICAN § ROOFCO SERVICES, § D E B T O R. § § | CASE NO. 03-83255-RCM-7 |
| TNL CONSTRUCTION, INC. and § CYBERDYNE SYSTEMS, INC., § PLAINTIFFS, § § VS. § § JAMES WADDELL JOHNSON, a/k/a § J.W. JOHNSON d/b/a AMERICAN § ROOFCO SERVICES, § DEFENDANT. § | ADVERSARY NO. 05-3117 |

**MEMORANDUM DECISION**

On January 18 and 19, 2006, the court heard the claims of TNL Construction, Inc. ("TNL") and Cyberdyne Systems, Inc. ("Cyberdyne"), ("Plaintiffs"), against James Waddell Johnson a/k/a J.W. Johnson d/b/a American Roofco Services ("Debtor"). The court has core jurisdiction of this matter under 28 U.S.C. § 1334 and 157(b)(2)(i).

At the beginning of trial on January 18, 2006, Cyberdyne voluntarily dismissed its claims against debtor without prejudice, therefore Cyberdyne will not be extensively referenced

hereafter except where necessary to establish the context of TNL's claims and alleged defenses to same.

This adversary proceeding was filed pursuant to 11 U.S.C. § 523(a)(2), (a)(3), (a)(6), and (c).

## Background

The parties stipulated to the following relevant facts in the pretrial order:

a. James W. Johnson ("Johnson") filed a voluntary petition for relief under Chapter 13 of Title 11 on December 31, 2003.

b. The case was subsequently converted to a Chapter 7 proceeding on or about July 7, 2004.

c. On February 16, 2004, TNL signed a contract with James W. Johnson Agency, LLC (the "contract"). Johnson, president of James W. Johnson Agency, LLC, negotiated and signed the contract.[1]

d. Pursuant to the contract, TNL agreed to loan $50,000 to James W. Johnson Agency, LLC.

e. On February 16, 2004, Cyberdyne, not TNL, issued a check to James W. Johnson Agency, LLC in the amount of $50,000.

f. TNL and Cyberdyne were not scheduled in Johnson's bankruptcy until March 14, 2005.

---

[1] Although not attached to the stipulation, a copy of the contract referred to is attached to this opinion as Exhibit 1. At the time of signing the contract, Mr. Hoang of TNL got his brother with Cyberdyne to issue to Debtor the $50,000 check and then TNL repaid such sum to Cyberdyne shortly thereafter.

-2-

g. On March 17, 2005, Johnson, by and through his attorney, mailed to Plaintiffs a notice that his Chapter 13 case had been converted to Chapter 7.

h. Plaintiffs did not receive actual notice of Johnson's bankruptcy until March 21, 2005.

i. On March 23, 2005, the court entered its order granting Defendant a discharge in Chapter 7.

j. On March 25, 2005, Defendant filed a further amended Schedule F, listing TNL as a creditor for the first time.

k. On March 23, 2004, TNL entered into a subcontract with Southern Sector Development LLC ("SSD") to perform heating, ventilation, and air conditioning ("HVAC") work at the Veteran's Administration Hospital of Dallas (the "VA Hospital"). *See* Def.'s Ex. 11.

l. TNL and Tommy Hoang, TNL's authorized representative, were involved in HVAC work at the VA hospital.

m. Johnson's bankruptcy is a no-asset bankruptcy.

n. Pursuant to Form B9A, "Notice of Chapter 7 Bankruptcy Case, Meeting of Creditors & Deadlines," creditors were instructed to not file a proof of claim unless the creditors received a notice to do so.

Additionally, it was undisputed that Debtor never repaid the $50,000 amount to TNL or Cyberdyne, in whole or in part, nor did Debtor pay to TNL any profits or money from any Veteran's

Administration contract.[2]

The first § 341(a) meeting of creditors in Debtor's Chapter 7 case was held on September 28, 2005, without timely notice to Plaintiffs. The deadline for filing complaints to determine dischargeablity of plaintiff's claims expired on November 24, 2004. Plaintiffs had no timely notice or knowledge of the Debtor's bankruptcy case or the deadline for filing complaints to determine dischargeablity.

The February 16, 2004 contract in question between Debtor and TNL was prepared by non-lawyer TNL personnel. It is not a model of clarity.

As shown by stipulation, on March 23, 2004, TNL entered into a subcontract with SSD, a minority construction company, through SSD's agent, Ron Ferguson, general manager, wherein TNL agreed to do certain HVAC duct work for SSD on the fourth floor remodeling project at the VA Hospital. SSD was the prime contractor with the owner, VANHCS.

During trial, the court ruled that TNL did not plead or show that it was entitled to recover any attorney's fees or exemplary damages.

Section 523(a)(3) reads as follows:

(a) A discharge under section 727, 1141, 1228(a),

---

[2] Neither Debtor nor his d/b/a American Roofco Services nor his corporation, J.W. Johnson Insurance Agency LLC ("Debtor's LLC") paid Plaintiffs any profits or monies.

>    1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt--
>
>    . . . .
>
>        (3) neither listed nor scheduled under section 521(1) of this title, with the name, if known to the debtor, of the creditor to whom such debt is owed, in time to permit--
>            (A) if such debt is not of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim, unless such creditor had notice or actual knowledge of the case in time for such timely filing; or
>            (B) if such debt is of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim and timely request for a determination of dischargeability of such debt under one of such paragraphs, unless such creditor had notice or actual knowledge of the case in time for such timely filing and request . . . .

Section 523(c)(1) reads as follows:

>    Except as provided in subsection (a)(3)(B) of this section, the debtor shall be discharged from a debt of a kind specified in paragraph (2), (4), or (6) of subsection (a) of this section, unless, on request of the creditor to whom such debt is owed, and after notice and a hearing, the court determines such debt to be excepted from discharge under paragraph (2), (4), or (6), as the case may be, of subsection (a) of this section.

Debtor's failure to timely list TNL's claim was inadvertent. Apparently Debtor and his attorney did not discuss how he could possibly still be liable for a corporate debt if he allegedly made possible misrepresentations to TNL when such debt was incurred. Debtor's amendment of his schedules to list TNL as a creditor did not cause disruption in the bankruptcy process of this case. *See Omni Mfg., Inc. v. Smith (In re Smith)*, 21 F.3d

660, 664 (5th Cir. 1994). Section 523(a)(3)(A) does not apply because among other reasons, this was a no asset case and no proof of claim filing deadline had been set, and the debt in question is allegedly a § 523(a)(2) or (a)(6) debt. *See Stone v. Caplan (In re Stone)*, 10 F.3d 285, 290-91, 291 n.13 (5th Cir. 1994), *see also Omni Mfg., Inc.*, 21 F.3d at 664 n.2.

Section 523(a)(3)(B) does apply because the debt in question is allegedly of a kind specified in § 523(a)(2) or (a)(6), and TNL's claim was not listed or scheduled in time to permit timely request for determination of dischargeability under § 523(a)(2) or (a)(6). Also, TNL had no actual notice of the case in time to request determination of dischargeability.

**Burden of Proof Under 11 U.S.C. § 523(a)(3)(B)**

An issue exists as to whether under § 523(a)(3)(B) the creditor merely has to show a colorable claim, meaning that the creditor's claim is non-dischargeable under section cited, *i.e.*, § 523(a)(2)(4) or (6), *Haga v. National Union Fire Insurance Company of Pittsburgh (In re Haga)*, 131 B.R. 320 (Bankr. W.D. Tex. 1991), or whether the claimant must actually prove its claim on the merits.

It appears that the better view is that the creditor in a case such as this must prove the merits of its § 523(a)(2) or (a)(6) claim. *See Jones v. Warren Constr. (In re Jones)*, 296 B.R. 447 (Bankr. M.D. Tenn. 2003); *Miley v. Martinez (In re*

-6-

*Martinez)*, No. 02-1003, 2002 Bankr. LEXIS 1888 (Bankr. M.D. La. Sept. 27, 2002).

### Additional Background

At the time that Plaintiff signed the February 16, 2004 contract (Pl.'s Ex. 5, Ex. 1 hereto), Debtor had already been in bankruptcy since December 31, 2003. He did not advise Plaintiff of his being in bankruptcy. He owned the corporation known as J.W. Johnson Insurance Agency, LLC. It was basically both parties' position that such company was the company listed on the contract (Ex. 1 hereto). Such company was variously known as "James W. Johnson, LLC; James W. Johnson Insurance Agency, LLC; or James Johnson, LLC." It was TNL's position that notwithstanding the fact that Debtor was acting for a corporation, his alleged § 523(a)(2)(A) fraudulent representations and statements made him individually liable for such alleged fraud. *See generally* 41 Texas Jur. 3d *Fraud & Deceit* § 74 "Principals and Agents" at pp. 305-07 (2004) (citing numerous cases involving principals and agents).

In Debtor's bankruptcy "Schedule B - Personal Property" Q-12 (Plf.'s Ex. 10, tab 1), he was asked to describe his stock interests in incorporated and unincorporated businesses, and he answered that he had none in spite of the existence of his LLC. It was also Debtor's position that at various times he advanced monies from the $50,000, totaling $10,000, to Ron Ferguson

(Def.'s Ex. 11) to keep Mr. Ferguson in business because of Mr. Ferguson's and SSD's relationship with the VA Hospital. Supposedly, he was never repaid by Mr. Ferguson, and he never listed any account receivable from Mr. Ferguson on his schedules. (Pl.'s Ex. 10, tab 1).

On or about January 26, 2004, post-bankruptcy, Debtor's d/b/a American Roofco Services received a check for $15,371.21 from the EPC Corp. (Def.'s Ex. 29) for subcontract work done by American Roofco Services on the restroom facilities at the VA Hospital pursuant to a September 3, 2003 subcontract (Def.'s Ex. 31).[3] Debtor never amended his schedules to show such receipt and apparently never turned over such $15,371.24 to his Chapter 7 trustee. Debtor testified that he paid such $15,371.24 to subcontractors.

Aside from its contentions about not being timely listed as a creditor on Debtor's schedules, in the pretrial order TNL listed its other contentions against Debtor as follows:

> Plaintiff TNL Construction, Inc. ("TNL") alleges that on or about February 16, 2004, Johnson, represented to TNL that he had signed a construction contract with the Federal Government to remodel the VA Hospital of Dallas [sic] but needed money to get started and that he would earn a $300,000 profit from the contract. As a result of such representations, TNL loaned Defendant $50,000 for such VA Hospital Project. In return, TNL would receive one-half of the profits, in addition to the repayment of its $50,000 loan.

---

[3] According to Debtor, Ron Ferguson initially did work for EPC. EPC allegedly was the initial general contractor on the VA project but was let go because of mishandling of funds.

-8-

> Defendant neither remodeled the VA Hospital nor repaid the $50,000 loan. Defendant informed TNL that he used the $50,000 to remodel his private residence. Defendant's actions constitute fraud. For these reasons, and reasons listed below, TNL believes that the debt owed by Johnson is nondischargeable.

(Pretrial Order at 2.)

Debtor denied TNL's contentions about any fraud and generally responded otherwise as follows:

He contended that as representative of the LLC he represented to TNL that the LLC might be able to put TNL in contact with a representative of SSD so that Debtor d/b/a American Roofco Services, TNL, and SSD could obtain the Veteran's Administration North Healthcare System contract to do the VA Hospital project (the Dallas VA Hospital project of remodeling the fourth floor). Debtor contends he made this representation to TNL because American Roofco had done construction work at the VA Hospital and became aware of the VA Hospital Fourth Floor Project.[4]

Debtor further contends:

> Once American Roofco, TNL and SSD agreed to do the VA Hospital Project, Johnson d/b/a American Roofco loaned approximately $10,000 to a representative of SSD to purchase materials and related items for the VA Hospital Project. SSD was to repay American Roofco from the proceeds of the contract between American Roofco, TNL, and SSD and VANHCS.
>
> . . .

---

[4] Except for the statements in parentheses, these statements in substance came from Defendant's proposed Finding of Fact at 2.

> After the Contract was executed, TNL and SSD bypassed Johnson d/b/a American Roofco and entered into a contract with VANHCS for the VA Hospital Project. By entering into an agreement with VANHCS for the VA Hospital Project, TNL excluded American Roofco from that contract.

(Def.'s Proposed Finding of Fact at 2.)

When Exhibit 1 hereto was signed, Debtor testified that he thought Mr. Ferguson had a verbal contract with the VA Hospital to do the renovation work on the VA Hospital Fourth Floor Renovation Project.

When Debtor was paying Mr. Ferguson, he was also building a house.

## 11 U.S.C. § 523(a)(2)(A)

In *Armstrong v. Jenkins (In re Jenkins)*, No. 03-3138, 2003 Bankr. LEXIS 1447, at *11-12 (Bankr. N.D. Tex. Nov. 5, 2003), the court stated:

> Under § 523(a)(2)(A), a debtor is denied a discharge for "any debt-for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud ...." 11 U.S.C. § 523(a)(2)(A). To prevail on a claim under § 523(a)(2)(A), the creditor must establish that (i) the debtor made false representations describing past or current facts, (ii) the representations were made with the intent and purpose of deceiving the creditor, (iii) the creditor justifiably relied on the representations, and (iv) the creditor sustained a loss as a result of the representations. *See McCoun v. Rea (In re Rea)*, 245 B.R. 77, 85 (Bankr. N.D. Tex. 2000)(*citing RecoverEdge L.P. v. Pentecost*, 44 F.3d 1284, 1292 (5th Cir. 1995)).

*See generally* 4 COLLIER ON BANKRUPTCY ¶ 523.08[1][d] at 523-44.10;

523.08[1][e] at 523-45 (15th ed. rev. 2005).

"[A] promise to perform acts in the future is [generally] not considered a qualifying misrepresentation merely because the promise subsequently is breached." *Allison v. Roberts*, 960 F.2d 481, 484 (5th Cir. 1992); *Riddle Farm Equip., Inc. v. Boles (In re Boles)*, 2005 Bankr. LEXIS 1092, at *3 (Bankr. M.D. N.C. Apr. 11, 2005).

However, a debtor's misrepresentation of his intentions may also constitute false representations within the meaning of the dischargeablity provision if, when the misrepresentation is made, debtor had no intention of performing as promised. *Allison v. Roberts*, 960 F.2d at 484.

In *Collier's* ¶ 523.08[1][d] at 523-44.10 to 523-45, it is stated:

> The failure to perform a mere promise is not sufficient to make a debt nondischargeable, even if there is no excuse for the subsequent breach. A debtor's statement of future intention is not necessarily a misrepresentation if intervening events cause the debtor's future actions to deviate from previously expressed intentions.
>
> A misrepresentation by a debtor of his or her intention to perform contractual duties, however, may be a false representation under section 523(a)(2)(A). Thus, section 523(a)(2)(A) may make a creditor's claim nondischargeable if the debtor had no intention of performing any of the obligations under the contract. This intent may be inferred from the fact that the debtor failed to take any steps to perform under the contract.
>
> Similarly, a purchase of goods on credit by a debtor who does not intend to pay for them is a false

>   representation. A creditor alleging fraud bears the
>   burden of proving that the debtor knew full well that
>   any professed intention to repay was false or was known
>   by the debtor not to be well grounded, and that the
>   debtor nevertheless deliberately obtained goods knowing
>   they were beyond his or her ability to pay. The
>   debtor's insolvency or inability to pay does not by
>   itself provide a sufficient basis for inferring the
>   debtor's intent. A debtor's honest belief that a debt
>   would be repaid in the future, even if in hindsight
>   found to have been very unrealistic, negates any
>   fraudulent intent.

(footnotes omitted).

It appears that in conversations with TNL's representative, Mr. Hoang, as confirmed in part by Exhibit 1 hereto, Debtor made the following representations to TNL:

(a) Debtor's LLC had signed a large construction contract with the United States Government to remodel the fourth floor of the VA Hospital. This was a false representation of a current material fact. The representation made was made with the intent of deceiving TNL. TNL justifiably relied on same, *see Field v. Mans*, 516 U.S. 59, 76 (1995), and TNL suffered a $50,000 loss as a result of same.

(b) That he needed $50,000 for labor and materials on such project. This was a false misrepresentation of a current material fact. The representation was made with intent to deceive TNL. TNL justifiably relied on same, *Field*, 516 U.S. at 76, and suffered a $50,000 loss by reason of same.

(c) That he would repay such $50,000 at the end of the contract plus $150,000, *i.e.*, fifty percent of his anticipated

-12-

net profit. This promise to do future acts was not fraudulent misrepresentation of his intention. *See Allison v. Roberts*, 960 F.2d at 484.

At such time, because of his relationship with Ron Ferguson of SSD, Debtor felt that such relationship could ripen into a large VA Hospital contract where he would be able to repay TNL.

## 11 U.S.C. § 523(a)(6)

TNL further claims that Debtor's conduct heretofore generally discussed above also constitutes a § 523(a)(6) offense.

> *Section 523(a)(6)* excepts a debt "for any willful and malicious injury by the debtor to another entity or to the property of another entity" from a debtor's discharge. *11 U.S.C. § 523(a)(6)*. The United States Supreme Court has established guidelines for determining whether a debt arises from a willful and malicious injury, and, therefore, is excepted from discharge under *§ 523(a)(6)*. *See Kawaauhau v. Geiger*, 523 U.S. 57, 59, 140 L. Ed. 2d 90, 118 S. Ct. 974, (1998). In *Geiger*, the Court concluded the provision applies to "acts done with the actual intent to cause injury," but excludes intentional acts that cause injury. *Id. at 61*. The Court held that nondischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury, and that the actor must "intend 'the consequences of an act,' not simply 'the act itself.'" *Id. at 61-62*. After *Geiger*, the Fifth Circuit has held that for a debt to be nondischargeable, a debtor must have acted with "objective substantial certainty or subjective motive" to inflict injury. *In re Miller*, 156 F.3d at 603.

*Armstrong v. Jenkins (In re Jenkins)*, No. 02-38913, 2003 Bankr. LEXIS 1447, at *9 (Bankr. N.D. Tex. Nov. 5, 2003).

In *Collier* ¶ 523.12-523.12[2], at 523-92.2 to 523-92.3, it

-13-

is stated in part:

> [1]-Relationship to Other Subsections of Section 523(a).
>
> Section 523(a)(6) generally relates to torts and not contracts. By its terms, it may apply to a broad range of conduct causing harm to people or property, subject to the limitation that the injury be "willful and malicious." Conduct which may give rise to a nondischargeable debt under section 523(a)(6) may also be nondischargeable under other subsections of section 523(a). For example, debts procured by fraud may be nondischargeable under section 523(a)(6) as arising from conduct causing willful and malicious injury to an entity or property of an entity. Three other subsections of section 523(a) make different sorts of debts procured by fraud nondischargeable. Consequently, in considering claims of nondischargeability under section 523(a)(6) arising from conduct which may give rise to nondischargeability of a debt under other subsections of section 523(a), courts must be careful to preserve the elements of nondischargeability found in other, more specific other subsections of section 523(a) to prevent section 523(a)(6) from rendering superfluous those other sections.

(footnotes omitted).

It appears that Debtor's previously described conduct does not rise to the level of a § 523(a)(6) offense. The heart of Plaintiff's contentions as alleged are § 523(a)(2)(A) offenses as opposed to conduct generally considered as § 523(a)(6) type offenses.

By his misrepresentations, he did not act with a subjective motive to inflict injury. It was a closer question whether by his misrepresentations he acted with objective substantial certainty to cause injury to TNL. *See Williams v. Int'l Bhd. of Elec. Workers Local 520 (In re Williams)*, 337 F.3d 504 (5th Cir.

2003); *Griffin v. Felton (In re Felton)*, 197 B.R. 881 (N.D. Cal. 1996).

### Debtor's Remaining Defensive Contention

Defendant contends that by TNL's March 23, 2004 subcontract with SSD to perform HVAC work at the VA Hospital (Debtor's Ex. 1), TNL excluded Defendant's d/b/a American Roofco Services from the contract thereby preventing him from performing on his contract with TNL. There was insufficient evidentiary proof of this defense.

Plaintiff's claim for $50,000 damages is found non-dischargeable under 11 U.S.C. § 523(a)(2)(A), (a)(3)(B), and (c)(1). Judgment will be entered in accordance with this opinion.

Signed this 7th day of February, 2006.

_____
Robert C. McGuire
United States Bankruptcy Judge

# BINDING CONTRACT AGREEMENT

This Contract is entered into this day 16th of February in the year of 2004
Between the JAMES W. JOHNSON AGENCY, LLC.
And the TNL CONSTRUCTION, INC.,
For the VA HOSPITAL OF DALLAS PROJECT CONSIST OF REMODELING 4TH
FLOOR, identified as:

The **CONTRACT DOCUMENTS** are dated and have been amended by
JAMES W. JOHNSON AGENCY, LLC. AND TNL CONSTRUCTION, INC.

This binding contractual agreement between TNL CONSTRUCTION INC.
(GUADALUPE HERRERA, HIENG VAN NGUYEN) here bye further known as party
of the first and James W. Johnson of JAMES W. JOHNSON AGENCY LLC., here bye
further known as party of the second. Where as party of the first will lend party of the
second no more than $50,000.00 to pay for labor and material. In exchange party of the
second will reimburse this money at the end of the contract on September 30th ,2004 plus
$150,000.00 net profit of contract. The **CONTRACT SUM** is $50,000.00 provided by
TNL Construction, Inc. The **CONTRACT TIME** is (7 Months) calendar days from the
16th of February 2004.

**THE CONTRACTOR AGREES AS FOLLOWS:**

**CONTRACT NET PROFIT:** for which the Contractor (JAMES W. JOHNSON
AGENCY, LLC) and its Surety (if any) shall be liable and
Required to pay the contractor (TNL CONSTRUCTION, INC.) material and labor
investment of $50,000.00 and $150,000.00 of net profit in accordance of this agreement
Documents.

**Project No.**
VA HOSPITAL OF DALLAS, TEXAS
February 2004

The two parties have entered into this Construction Contract as of the date first written
above.

**CONTRACTING PARTIES**
_TNL Construction, INC._
Contractor
By _TNL Construction, INC_
Name & Title _____ President
_____
Contractor (Owner)
By _JAMES JOHNSON AGENCY, LLC._
Name & Title _____ President

Date: _2/16/2004_

P-0036

**EXHIBIT 1**